## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | 2:15cv1698 |
| v. | ) | 2:11cr207 |
| | ) | **Electronic Filing** |
| MICHAEL J. KRAMER | ) | |

### OPINION

Presently before the court is defendant's amended motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For the reasons set forth below, the motion will be denied.

On September 13, 2011, a Grand Jury sitting in the Western District of Pennsylvania returned a four count indictment charging Michael J. Kramer ("Kramer" or "defendant") with: (1) Bank Robbery in violation of Title 18, United States Code, Section 2113(a); (2) Armed Bank Robbery in violation of Title 18, United States Code, Section 2113(d); (3) Possession of a Firearm by a Convicted Felon in violation of Title 18, United States Code, Section 922(g)(1); and (4) Using and Carrying a Firearm During and in Relation to a Crime of Violence and Possessing a Firearm in Furtherance of a Crime of Violence in violation of Title 18, United States Code, Section 924(c)(1)(A)(ii). The Government filed an Application and Order for Writ of Habeas Corpus *Ad Prosequendum* on September 23, 2011, for the removal of Kramer from the State Correctional Institution in Greensburg, Pennsylvania, where he was serving a state sentence. The writ sought his attendance at a hearing in this court. See Document Nos. 6 & 7.

On October 13, 2011, Kramer made his initial appearance in federal court before Magistrate Judge Robert C. Mitchell. The Government requested detention. Kramer waived his detention hearing, and the United States Marshal transported and committed him to the Northeast Ohio Correctional Center ("NEOCC"). See Documents Nos. 8, 10, 11 & 16.

On October 20, 2011, Kramer was arraigned before Magistrate Judge Mitchell where he entered a plea of not guilty, and because he wanted to be returned to state custody, he waived his rights under the Interstate Agreement on Detainers Act on the record. Magistrate Judge Mitchell entered an Order specifically stating:

> IT IS ORDERED that the defendant is to be returned to the custody of [SCI Greensburg] from which he had been removed pursuant to a writ of habeas corpus *ad prosequendum*, **counsel for the defendant having waived the interstate agreement on detainers act on the record**, and,
> IT IS FURTHER ORDERED that the United States Marshal . . . file a detainer against [Kramer] on the current federal charges with the Warden at [SCI Greensburg] and . . . **the government shall file a writ to secure the appearance of [Kramer] at any future court proceedings.**

See Document No. 15 (Emphasis added). Both Kramer and his counsel "consented to" the Order by affixing their signature to the order. Id. Kramer was returned to state custody at SCI Greensburg on October 20, 2011. See Document No. 16.

Between February 1, 2012, and September 17, 2012, Kramer filed eight (8) motions for extensions of time to file his pretrial motions. See Document Nos. 19, 21, 23, 25, 27, 29, 31 and 33. On October 26, 2012, the court scheduled a change of plea hearing for November 8, 2012. See Document No. 35. The Government filed an Application and Order for Writ of Habeas Corpus *Ad Prosequendum* on November 1, 2012, for the removal of Kramer from SCI Greensburg for his attendance at the change of plea hearing. See Document No. 36. Kramer was brought into federal custody pursuant to the writ on November 7, 2012. See Document No. 42.

On the day of Kramer's scheduled change of plea hearing, November 8, 2012, a Motion to Postpone and/or Reschedule Change of Plea Hearing was filed on behalf of Kramer. See Document No. 42. The reason given for the postponement was that counsel needed additional time "to complete plea negotiations and consult with Mr. Kramer." See Document

No. 38.  The motion was granted, and Kramer was returned to SCI Greensburg on November 8, 2012.  See Document No. 42.

On November 9, 2012, defendant filed a motion for a pre-plea presentence investigation report.  The motion was granted by Order of November 23, 2012, and the Probation Office was directed to prepare a pre-plea report setting forth defendant's criminal history calculations.  See Document No. 43.  Time was excluded under the Speedy Trial Act from November 9, 2012, through the receipt of the report pursuant to an ends-of-justice finding.

The Probation Office filed the pre-plea Presentence Investigation Report on January 18, 2013.  See Doc. No. 44.  Defendant moved to extend the time to file pretrial motions from that date to March 4, 2013.  See Doc. No. 45.  Defendant's motion was granted and time was excluded from January 28, 2013, through March 4, 2013.  See Doc. No. 46.

Defendant then filed a *pro se* motion to dismiss all charges pursuant to a violation of the Interstate Agreement on Detainers Act, 18 U.S.C. App. 2 § 2 *et al.* ("IADA").  See Doc. No. 47. The motion was based on the entirety of the IADA and was not limited to any particular provision.  Thereafter and through counsel, defendant continued to file motions to continue the deadline to file pretrial motions.  The motions were granted and the deadline was extended through May 6, 2013.  See Doc. No.s 48, 49, 51, 55.  A status conference was held on April 18, 2013, wherein the court was informed that a counseled motion to dismiss pursuant to the IADA would be filed.  See Doc. No. 56.  The defendant filed that motion on May 6, 2013, and the government filed its response on May 13, 2013.  See Doc. No.s 57, 58.

Defendant contended in the counseled motion that because he did not waive his rights under the IADA when he was returned to state custody on November 8, 2012, his rights under the anti-shuttling provision of the IADA were violated and the charges had to be dismissed.  He also argued that he never waived his right to be tried within 120 days, and the Government's

failure to bring him to trial within that period also was a violation of the IADA that required dismissal of the case. Doc. No. 57.

The court denied the motion pursuant to a written Memorandum Order issued on June 10, 2013. See Doc. No. 59. After thoroughly examining the nature and content of defendant's written waiver of the IADA, the court concluded that defendant waived his rights under the IADA, consented to further removals for any future court proceeding and did not make any changes to the court's record and orders that would have limited the waiver to only the anti-shuttling component of the IADA. Consequently, defendant waived any rights under the IADA's anti-shuttling provision as well as the IADA's time limitation on bringing a detainee to trial on pending charges. Id. at p. 5 ("Therefore, the Court finds that Kramer waived his rights under the IADA, and his motion to dismiss shall be denied.").

Following the issuance of the Memorandum Order, the court issued a Trial Scheduling Order on June 10, 2013, setting trial for June 24, 2013. Doc. No. 60. On June 18, 2013, defendant filed a motion to schedule a change of plea hearing, which was granted, and the court set a change of plea hearing for the third time in the case. Doc. No.s 61, 62. On July 9, 2013, defendant appeared with counsel and, following a thorough change-of-plea colloquy, entered a plea of guilty to Counts 2, 3 and 4. See Doc. No.s 67, 68. Defendant elected to return to state custody pending sentencing.

Defendant then filed a motion to appoint new counsel based on a perceived belief that defense counsel had a conflict of interest. After a hearing on the motion, the court concluded that there was no basis in the record for a change in counsel. See Doc. No.s 72, 81.

On April 25, 2014, defense counsel filed a motion to withdraw from representation based on a conflict of interest. Doc. No. 101. The motion was granted on May 20, 2014, Attorney Linda C.J. Cohn was withdrawn from the case and Attorney Jon Pushinsky was appointed to

represent defendant.  See Doc. No.s 102, 103.  A status conference was then set with counsel for June 20, 2014, which was rescheduled for July 10, 2014, and then for August 5, 2014.  See Doc. No.s 104, 105 and 106.  At the August 5, 2014, conference defendant advised the court that he needed transcripts because he had authorized his new counsel to file a motion to withdraw his guilty plea.  Doc. No. 107.  The transcript on the September 13, 2013, hearing on defendant's petition to have counsel withdrawn based on a conflict of interest was then transcribed.  See Doc. No. 108.[1]

New counsel filed objections to the Presentence Investigation Report challenging defendant's designation as a career offender.  The court overruled those objections in its Tentative Findings and Rulings of December 17, 2014.  Specifically, the court found that his drug trafficking offense from 2001 qualified as a controlled substance offense even though it had been transferred from juvenile to adult court; that his prior conviction for "Robbery – Threatened Immediate Serious Injury" was a crime of violence; and the two offenses qualified as predicate offenses under U.S.S.G. § 4B1.1(a).  It further rejected defendant's effort to attack these prior convictions based on the effectiveness of counsel during the predicate offenses.  See Tentative Findings and Rulings of December 17, 2014 (Doc. No. 127).  The court further determined that defendant had a sentencing range of 188 to 235 as to counts 2 and 3, and a consecutive mandatory minimum of 84 months at count 4, which in combination produced a sentencing range of 272 to 319 months.

Sentencing was held on December 23, 2014.  After full development of the record, including receiving expert testimony, defendant was sentenced to 156 months at count 2 and 120

---

[1] At the September 13, 2013, hearing defendant indicated he had advised counsel that his plea was not entered knowingly and voluntarily and he wanted counsel to have it withdrawn.  Id. at p.2.  After the court rejected any basis for appointing new counsel based on a conflict of interest, defendant again waived his rights under the IADA and requested to be returned to SCI Hazelton to continue with state programing.  Id. at 9.

months at count 3, to run concurrently with each other, and 84 months at count 4, to run consecutively, for a total term of 240 months; 5 years of supervised release, and a special assessment of $300.00. Defendant also was ordered to pay restitution in the amount of $1,091.00. At the conclusion of the sentencing hearing defendant requested that a notice of appeal be filed. The Clerk of Court immediately filed the notice. See Notice of Appeal at Doc. No. 133.

Defendant was appointed new counsel for the appeal. After review of the record and further consultation with defendant, appellate counsel filed a letter indicating a motion to voluntarily dismiss the appeal would be forthcoming. See United States v. Kramer, App. No. 15-01087, Letter of Nov. 13, 2015, and Motion for Voluntary Dismissal (Doc. No.s 003112129001 & 003112129002). The motion was signed by defendant and filed on January 6, 2016, and the appeal was dismissed on January 8, 2016.

In his current motion, defendant raises several grounds in support of his contention that his Fifth Amendment right to due process and Sixth Amendment right to effective assistance of counsel were violated. These include: 1) his conviction for armed bank robbery in violation of 18 U.S.C. § 2113(d) does not constitute a crime of violence in light of United States v. Borden, -- U.S. --, 141 S. Ct. 1817 (2021); 2) his conviction for using a firearm in relation to a crime of violence is invalid because armed bank robbery is not a crime of violence; 3) his prior conviction for robbery under Pennsylvania statute 18 Pa. C. S. § 3701(a)(1)(ii) does not qualify as a crime of violence in light of Johnson v. United States, -- U.S. --, 135 S. Ct. 2552 (2015), and therefore he improperly was classified as a career offender under U.S.S.G. 4B1.3; 4) his change of plea was not knowingly, intelligently and voluntarily made because the limited waiver in the parties' plea agreement did not permit him to challenge on appeal this court's adverse ruling on his motion to dismiss and argue "that the Interstate Agreement on Detainers was violated when he

6

was not brought to trial within 120 days of his arrival into federal custody pursuant to Title 18, U.S.C. App. 2 § 2 Art. IV(c)"; and 5) his right to effective assistance of counsel was violated when his initial trial counsel failed to negotiate a plea agreement that permitted him to pursue his contention in his motion to dismiss that his rights under the IADA were violated when he was not brought to trial within 120 days of being brought into federal custody. Amended Motion to Vacate (Doc. No. 164) at p. 9.

The government maintains that that defendant's motion should be summarily dismissed for several reasons. First, armed bank robbery in violation of federal law remains a crime of violence. Second, under controlling Third Circuit authority, challenges to a career offender designation are not cognizable on collateral review. Third, the parties' plea agreement contained a waiver which bars any contention that defendant's convictions for armed bank robbery and robbery in violation of § 3701(a)(1)(ii) do not constitute crimes of violence. Fourth, defendant has procedurally defaulted all claims that he failed to raise on direct appeal. Finally, from the government's perspective defendant has not presented a valid basis for finding that counsel was ineffective because a) the record shows that when all requested continuances that were granted are given proper effect, defendant entered his plea of guilty within the 120-day window and b) given the available evidence and defendant's multiple confessions, his contention that he would have turned down the plea agreement and faced the resulting consequences is incredible.

A § 2255 motion may be disposed of summarily where the motion fails to set forth a basis upon which relief can be granted or where the factual allegations advanced in support of the motion are vague, conclusory or patently frivolous. See Rule No. 4 of the Rules Governing § 2255 Proceedings; Blackledge v. Allison, 431 U.S. 63 (1977); Page v. United States, 462 F.2d 932, 933 (3d Cir. 1972) (where the record affirmatively indicates that a claim for relief is without merit, it may be decided summarily without a hearing). In Government of Virgin Islands v.

Nicholas, 759 F.2d 1073, 1075 (3d Cir. 1985), the United States Court of Appeals for the Third

Circuit stated:

> A Section 2255 motion is addressed to the discretion of the trial judge
> in the first instance and where the record affirmatively indicates the
> claim for relief is without merit, the refusal to hold a hearing will not
> be deemed an abuse of discretion.

Id.; accord United States v. Thomas, 221 F.3d 430, 437 (3d Cir. 2000).  Other courts have reached

the same conclusion.  See Baumann v. United States, 692 F.2d 565, 572 (9th Cir. 1982) (proper

for district court to dismiss portion of § 2255 petition without evidentiary hearing where

allegations conclusively failed to state a claim for relief); United States v. Oliver, 865 F.2d 600,

604 (4th Cir.), cert. denied, 493 U.S. 830 (1989) (district court may dismiss § 2255 petition

pursuant to Rule 4(b) where record conclusively demonstrates that movant is not entitled to relief

as a matter of law); Mathews v. United States, 11 F.3d 583, 584-86 (6th Cir. 1993) (where §

2255 petition raises no factual disputes and bases for relief are without merit, district court need

not hold an evidentiary hearing and may dismiss the motion summarily).

It is well settled that the first question to be resolved in assessing a § 2255 motion is

whether the movant has alleged "an error sufficiently fundamental to come within the narrow

limits of § 2255 [thus] making the conviction vulnerable to attack."  United States v. Biberfeld,

957 F.2d 98, 102 (3d Cir. 1992) (citing Napue v. Illinois, 360 U.S. 264, 269 (1959)).

"Habeas corpus has long been available to attack convictions and sentences entered . . . without

jurisdiction [and more recently has been] expanded to encompass claims of constitutional error

as well."  United States v. Addonizio, 422 U.S. 178, 185 (1979).

Where review of a conviction or sentence is sought based only on an error of law, "the

scope of collateral attack has remained far more limited."  Stone v. Powell, 428 U.S. 465, 477 &

n.10 (1976); see also Reed v. Farley, 512 U.S. 339, 354 (1994) (citing Davis v. United States,

417 U.S. 333, 346 (1974) and Hill v. United States, 368 U.S. 424, 428 (1962)).  In such

circumstances "habeas review is available to check violations of federal laws when the error qualifies as 'a fundamental defect which inherently results in a complete miscarriage of justice or an omission inconsistent with the rudimentary demands of fair procedure.'" Reed, 512 U.S. at 348 (quoting Hill, 368 U.S. at 428); United States v. Essig, 10 F.3d 968, 977 n.25 (3d Cir. 1993); see also Coleman v. Thompson, 501 U.S. 722, 750 (1991); Grant v. United States, 72 F.3d 503, 505-06 (6th Cir. 1996) ("nonconstitutional claims not raised at trial or on direct appeal are waived for collateral review except where the errors amount to something akin to a denial of due process").

In contrast to fundamental errors, non-fundamental errors which are not raised on direct appeal where there was an opportunity to do so are waived. Essig, 10 F.3d at 976-77 & n.25; Grant v. United States, 72 F.3d 503, 505-06 (6th Cir.), cert. denied, 517 U.S. 1200 (1996) (claims which do not amount to serous defects meriting relief outside the normal appellate process are waived). For example, in United States v. Folk, 954 F.3d 597 (3d Cir. 2020), the court followed the general consensus of the other courts of appeals and held that an incorrect career-offender designation under the advisory guidelines is not cognizable under § 2255 because it is neither a procedural error that qualifies as "an omission inconsistent with the rudimentary demands of fair procedure" nor "a fundamental defect that inherently results in a complete miscarriage of justice." Id. at 604.

In addition to presenting a claim falling within these limited substantive areas, significant procedural restrictions have been imposed in conjunction with claims for collateral relief that were not raised on direct appeal. Bousley v. United States, 523 U.S. 614, 621-22 (1998). As to alleged errors which are "based on trial errors to which no contemporaneous objection was made, a convicted defendant must show both (1) 'cause' excusing his procedural default, and (2)

'actual prejudice' resulting from the errors of which he complains." United States v. Frady, 456 U.S. 152, 167-68 (1982).

It is undisputed that defendant withdrew his appeal prior to its adjudication by the United States Court of Appeals for the Third Circuit.  His claims that a) his prior conviction for robbery under Pennsylvania statute 18 Pa. C. S. § 3701(a)(1)(ii) does not qualify as a crime of violence in light of Johnson v. United States, -- U.S. --, 135 S. Ct. 2552 (2015); and b) his change of plea was not knowingly, intelligently and voluntarily made because the limited waiver in the parties' plea agreement did not permit him to pursue on appeal his claim "that the Interstate Agreement on Detainers was violated when he was not brought to trial within 120 days of his arrival into federal custody pursuant to Title 18, U.S.C. App. 2 § 2 Art. IV(c)" were known and could have been presented to the Third Circuit.  By failing to raise these issues on direct appeal, the use of them as a basis for collateral relief is procedurally defaulted.  See Murray v. Carrier, 477 U.S. 478, 491 (1986) (failure to raise a claim on direct appeal procedurally defaults the review of that claim).  Thus, in order to proceed under these circumstances, defendant must demonstrate both "cause" and "actual prejudice" or that he is "actually innocent."  Bousley, 523 U.S. at 422 (citations omitted).

A showing of "cause" in this context requires a petitioner to identify some objective external factor which impeded his or her ability to raise the alleged error on direct appeal. Coleman, 501 U.S. at 753; Murray, 477 U.S. at 488 ("cause for a procedural default on appeal ordinarily requires a showing of some external impediment preventing counsel from constructing or raising the claim")).  "Attorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error.'"  Coleman, 501 U.S. at 753 (quoting Murray, 477

U.S. at 488).[2]  A petitioner's failure to establish the "cause" prong of the inquiry precludes relief

for any asserted prejudice absent a showing that the error "has probably resulted in the

conviction of one who is actually innocent."  Bousley, 523 U.S. at 623 (quoting Murray, 477

U.S. at 496)).

The "prejudice prong" requires a petitioner to show "actual prejudice resulting from the

alleged . . . violation."  Wainwright v. Sykes, 433 U.S. 72, 84 (1977); Reed, 512 U.S. at 354.

"To show 'actual prejudice' as a result of his guilty plea, a defendant 'must show that there is a

reasonable probability that, but for [the complained of] errors, he would not have pleaded guilty

and would have insisted on going to trial.'"  United States v. Duell, 2021 WL 858445, *2 (W.D.

Pa. March 8, 2021) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).

Here, defendant is unable to show cause in order to excuse his procedural default as to his

basis for challenging the determination that his prior Pennsylvania robbery conviction was a

crime of violence and he did not knowingly enter into the change of plea agreement.  These

asserted errors were known to defendant and his counsel and defendant elected not to pursue

them on appeal.  He is barred from doing so now.

Defendant's contention that his offense of conviction for armed bank robbery is not a

crime of violence also is without merit.  As previously noted, the court's decision in Folk

precludes all of defendant's claims that are predicated on the contention that he erroneously was

designated a career offender and/or sentenced pursuant to a guidelines sentencing range based on

that designation.  Folk precludes petitioner's ability to obtain relief, at least directly, on his

claims that his predicate offense and/or his offense of conviction were insufficient to trigger a

---

[2]  Claims of ineffective assistance of counsel are not subject to procedural default and may be
raised for the first time in a collateral proceeding commenced pursuant to § 2255.  See Massaro
v. United States, 538 U.S. 500, 504 (2003) ("We hold that an ineffective-assistance-of-counsel
claim may be brought in a collateral proceeding under § 2255, whether or not the petitioner
could have raised the claim on direct appeal.").

career offender designation. Consequently, the bases underlying his second and third grounds for relief cannot be remedied through the instant motion.

But even assuming for the sake of argument that defendant can proceed with his claims that armed bank robbery in violation of 18 U.S.C. § 2113(d) and robbery by threat of force under Pennsylvania statute 18 Pa. C. S. § 3701(a)(1)(ii) no longer constitute crimes of violence, his contentions fail on the merits. First, as defendant appropriately acknowledges, the Third Circuit has held that armed bank robbery in violation of § 2113(d) is divisible, and where the defendant has been charged with committing bank robbery in violation of § 2113(a), the resulting conviction under § 2113(d) is a crime of violence. After considering the argument defendant advances here, the court in United States v. Mark Jordan concluded:

> Common sense wins this time: armed bank robbery is a crime of violence. The statutory text, the record, and our precedent show that § 2113(d) is a divisible statute. Whenever a federal crime is predicated on committing, attempting to commit, or conspiring to commit another crime, the elements of the particular predicate crime at issue are elements of the nested crime too. And an armed bank robbery (a § 2113(d) violation predicated on § 2113(a)'s first paragraph) always involves purposely or knowingly using, attempting to use, or threatening to use force. So even after Borden, this version of § 2113(d) is a crime of violence under § 924(c).

96 F.4th 584, 594-95 (2024).

The record reflects that defendant pled guilty to armed bank robbery in violation of § 2113(d) at count 2 and using and carrying a firearm in relation to a crime of violence in violation of § 924(c) at count 4. Count 2 charged defendant with taking from the person of another "by force, violence and intimidation" the amount of $1091.00, on or about March 7, 2011, which funds belonged to the Economy Savings Bank and in committing the offense "did assault and put in jeopardy the life of another person by the use of a dangerous weapon, that is, a black handgun." Indictment (Doc. No. 1) at Count 2. Count 4 was predicated on and incorporated the crime of armed bank robbery as charged in count 2. The factual basis proffered by the government and admitted by defendant left no doubt that he pled guilty to

these two offenses as charged.  See Change of Plea Hearing of July 9, 2013 (Doc. No. 142) at p. 20-22 (admitting to the allegations of counts 2 and 4 and to brandishing a black handgun during the commission of the March 7, 2011, bank robbery).  If follows that under the modified categorical approach, defendant's charged offense conduct and plea colloquy establish that he committed a crime of violence.

Defendant's contention that his prior conviction for robbery by threat of bodily injury in violation of 18 Pa. C. S. § 3701(a)(1)(ii) does not qualify as a crime of violence suffers from similar shortcomings.  In United States v. Henderson, 80 F.4th 207 (3d Cir. 2023), the United States Court of Appeals for the Third Circuit was presented with the question of whether § 3701(a)(1)(ii) continues to constitute a crime of violence under the elements clause of the guidelines in light of Borden v. United States, -- U.S. --, 141 S. Ct. 1817 (2021).  In Henderson, the district court had determined "that: (1) § 3701(a) is divisible and Henderson was convicted of violating subsection (ii) of the statute; and (2) subsection (ii) qualified as a "crime of violence" under U.S.S.G. § 4B1.2(a) because the subsection provides that a person is guilty of robbery if he "threatens another with or intentionally puts him in fear of immediate serious bodily injury," App. 109 (quoting 18 Pa. Cons. Stat. § 3701(a)(1)(ii)), which means a violation of the subsection necessarily "requires the purposeful use or threat of physical force against another."  80 F.4th at 209-10 (citations omitted).  The Third Circuit concluded that "[t]he District Court was correct" and it affirmed.  Id. at 209.

The Third Circuit's consideration of the issue was three-fold.  First, it considered whether § 3701(a) is a divisible under the categorical approach and concluded that it remained divisible.  It then applied the "modified categorical approach" to determine which subsection Henderson had violated.  The parties did not dispute that defendant was convicted of the serious bodily injury subsection at § 3701(a)(ii).  So the court turned its attention to the issue

of "whether subsection (ii) of the Pennsylvania robbery statute is a crime of violence under

either § 4B1.2(a)'s elements clause or its enumerated offenses clause." Id. at 212.

The court framed its inquiry under the elements clause as follows:

To qualify as a crime of violence under the elements clause, the offense must have "as an
element the use, attempted use, or threatened use of physical force against the person of
another." U.S.S.G. § 4B1.2(a)(1).  For subsection (ii) to meet this definition, (1) a
defendant must threaten to use physical force, Ramos, 892 F.3d at 611, and (2) the threat
must be made intentionally or knowingly, Borden v. United States, ―― U.S. ――, 141 S.
Ct. 1817, 1826, 210 L.Ed.2d 63 (2021).

Id.  It then concluded that subsection (ii) met both requirements and qualified as a crime of

violence.

In reaching the above determination, the court considered "whether a theft where a

defendant 'threatens another with or intentionally puts him in fear of immediate serious bodily

injury,' 18 Pa. Cons. Stat. § 3701(a)(1)(ii), involves the threatened use of physical force

against another."  It explained that "Section 4B1.2(a)(1) envisions the requisite 'use of

physical force' as 'force capable of causing physical pain or injury.'" Id. (quoting Stokeling v.

United States, ―― U.S. ――, 139 S. Ct. 544, 553, 202 L.Ed.2d 512 (2019)).  After a fair

assessment of the plain language of the statute, the court reasoned that "[b]ecause subsection

(ii) requires proof that the victim was threatened with, or put in fear of, immediate serious

bodily injury, it contemplates a level of force that is capable of causing physical pain or injury

and therefore satisfies the force provision of § 4B1.2(a)'s elements clause."  Id. (citing United

States v. McCants, 952 F.3d 416, 428 (3d Cir. 2020) (holding textually similar New Jersey

robbery statute qualified as crime of violence because it required a threat of "bodily injury").

The court likewise concluded that the serious bodily injury section of Pennsylvania's

robbery statute requires proof that the defendant acted with the requisite *mens rea*.  In this

regard "[t]he text, structure and case law [] show" that the Commonwealth must prove an

intentional or knowing *mens rea* in order to sustain a conviction under § 3701(a)(1)(ii).  Id. at 213.

More specifically, "viewing subsection (ii)'s threatens clause in its entirety, the clause 'threatens another with [ ] immediate serious bodily injury' has an oppositional meaning because the language 'another with' introduces an intended target, not a mere recipient of the threat by happenstance."  Henderson, 80 F.4th at 215.  This clause "conveys an intentional act because the threat must be directed toward another person with the intent of causing the victim to fear serious bodily injury."  Id. (citing Borden, 141 S. Ct. at 1827; Thomas, 546 A.2d at 119; and United States v. Stanford, No. 22-1272, 75 F.4th 309 (3d Cir. July 28, 2023) (Holding that Delaware robbery, 11 Del. C. § 831(a), qualifies as a crime of violence under the elements clause because it "requires the intentional use or threatened use of immediate force 'upon another person,' " and thus involves force that is "consciously directed" toward a victim.) (quoting Borden, 141 S. Ct. at 1826)).

A conviction pursuant to 18 Pa. C. S. § 3701(a)(1)(ii) constitutes a crime of violence under the elements clause in U.S.S.G. § 4B1.2.  It is undisputed that defendant's conviction for robbery was pursuant to § 3701(a)(1)(ii).  See ¶ 34 of PSIR (Doc. 84); Amended Motion (Doc. No. 164) at ¶ 26(B) (arguing that defendant's prior conviction under 18, Pa. C. S. § 3701(a)(1)(ii) is not a predicate crime of violence under Johnson v. United States, -- U. S. --, 135 S. Ct. 2552 (2015)).  Accordingly, defendant's contention that he improperly was classified as a career offender because his prior threat of bodily injury robbery conviction was not a crime of violence is unavailing.

Finally, defendant's assertion that his trial counsel was ineffective in brokering a sufficient plea agreement also is wide of the mark.  A two-part test is utilized to assess an ineffective counsel claim.  See Strickland v. Washington, 466 U.S. 668 (1984).  The first prong

requires the petitioner to demonstrate that counsel's performance was deficient. This requirement is met where "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Flamer v. State of Delaware, 68 F.3d 710, 728 (3d Cir. 1995) (quoting Strickland, 466 U.S. at 687)). This prong requires proof that counsel's performance fell below an objective standard of reasonableness under the prevailing professional norms, which existed at the time. Id. The assessment begins with a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance" and the court's scrutiny of counsel's performance is to be highly deferential. Id. (citing Strickland, 466 U.S. at 689); see also Government of Virgin Islands v. Weatherwax, 77 F.3d 1425, 1431 (3d Cir. 1996). The assessment of counsel's performance must be made in light of all the circumstances and the ultimate objective of assuring vigorous advocacy of the petitioner's defense. Id. It also must be made without the "distorting effects of hindsight" and the petitioner has the burden of overcoming the strong presumption that counsel was effective. United States v. Kissick, 69 F.3d 1048, 1054 (10th Cir. 1995).

The second prong of the Strickland analysis requires a showing that counsel's ineffectiveness was prejudicial. Flamer, 68 F.3d at 728. This prong requires a petitioner to demonstrate that but for counsel's unprofessional errors, there is a reasonable probability that the result of the prosecution would have been different. In this context "[a] reasonable probability is one which is 'sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694). The assessment cannot be based upon generalities, but instead must be based upon a demonstration of how the "specific errors of counsel undermined the reliability of the [outcome]." Flamer, 68 F. 3d at 729 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26 (1984)). Where the alleged error is based upon a failure to make a reasonable investigation or the election to pursue one defense over another, a heavy measure of deference must be accorded

to counsel's judgment.  As long as there was a reasonable basis for counsel's strategic decision, counsel may not be found to be ineffective.  See Weatherwax, 77 F.3d at 1432.

As an initial matter, defendant has failed to even show that defense counsel's performance in obtaining the conditional provision of the plea agreement fell below the objective standard of reasonableness guaranteed by the Sixth Amendment.  His claim is that the conditional carveout was inadequate to pursue appellate review of his motion to dismiss pursuant to Interstate Agreement on Detainers Act and this court's disposition of that motion (i.e., Doc. No.s 57 and 59).  And more specifically, defendant asserts that his "guilty plea and waiver of his right to trial by jury was additionally not knowingly, voluntarily and intelligently made and his right to the effective assistance of counsel was violated as [he pled] guilty with the incorrect understanding and belief that he would be entitled to appeal the denial of his motion to dismiss the indictment based on the argument that the Interstate Agreement on Detainers was violated when he was not brought to trial within 120 days of his arrival into federal custody pursuant to Title 18, U.S.C. App. 2 § 2 Art. IV (c)."  Amended Motion to Vacate (Doc. No. 164) at ¶ 26(F).  And trial counsel was "ineffective for failing to negotiate a plea agreement which properly preserved [his] right to appeal the claim that the trial court erred in failing to dismiss the indictment based on" this argument.  Id. at ¶ 26(G).

The conditional provision in the plea agreement provided:

As a condition of his guilty plea, Michael J. Kramer may take a direct appeal from his conviction limited to the following issue: whether his waiver of rights under the Interstate Agreement on Detainers Act (18 U.S.C.A. App.2 § 2, Article IV(e) at the time of his arraignment remained in effect upon his November 2012 federal court appearance and until the time his counsel filed the Motion to Dismiss Indictment at Doc. No. 57 of Crim. No. 11-207.  If Michael J. Kramer takes a direct appeal raising this issue and prevails in the appeal, he may withdraw his plea of guilty.  If he does not take a direct appeal or does not prevail in the appeal, the plea of guilty shall stand.

The foregoing reservations of the right to appeal on the basis of specified issues do not include the right to raise issues other than those specified.

17

Plea Agreement at ¶ A.6.

It is defendant's contention that this carveout did not permit him to advance one of the two central components of his motion to dismiss: that this court erred in failing to dismiss the indictment pursuant to a violation of the 120 day limit in § IV(c) of the IADA. This contention is disingenuous for a number of reasons.

First, defendant was able to appeal the court's ruling on the IADA. He was poised to brief the issue and obtain a ruling from the Court of Appeals. He does not posit a ruling from that court that concluded that the conditional provision permitted only partial review of this court's ruling on his motion to dismiss. To the contrary, he bases his contention that such was the case on the prefatory email exchanges between his appellate counsel and government appellate counsel. In that exchange, government counsel zealously asserted that the anti-shuttling provision was the only claim that was preserved in the plea agreement and that the speedy-trial claim was not. Defendant's counsel indicated that she thought the conditional provision "preserved the issues raised in the motion." Email Exchange Between Donovan Cocas and Sarah Gannet (Doc. No. 164-4) at p. 2-3. And government counsel then asserted "[l]ook at paragraph 6 of the Plea Agreement. It doesn't say he preserves everything in his motion; it just cites the IAD's anti-shuttling provision. So I'd understand if [defendant] was trying to raise the anti-shuttling provision (or even that one, plus a speedy-trial issue), but if he's just raising a speedy-trial issue, I think his appeal is going to collapse on his appellate waiver." Id. at p. 2.

The government's zealous interpretation of the conditional provision does not present sufficient authority to establish that defendant was barred from pursuing the issues raised in his motion to dismiss. His appellate counsel had the ability to pursue any issue raised in the motion to dismiss and resolved by this court and she was poised to do so. The fact that

defendant thereafter chose to withdraw his appeal and pursue relief pursuant to the Supreme

Court's then recent landmark decision in <u>Johnson</u> was a decision he knowingly decided to

pursue.  That decision and course of action procedurally defaulted any claim that the appellate

waiver failed to encompass all of the arguments raised in defendant's motion to dismiss.

    Moreover, the phrasing of the conditional provision tracks the issues raised in

defendant's motion and this court's Memorandum Opinion resolving that motion.  Defendant

advanced the following argument in this court:

> Mr. Kramer was returned to state custody twice during the pendency of this case
> following the filing of the first detainer on September 14, 2011.  The first time Mr. Kramer
> was returned to state custody, he entered into an IAD waiver seeking to be returned.  As a
> result, this waiver affects the anti-shuttling provision of the IAD.  The second time he was
> returned to state custody, however, he did not waive any of his rights under the IAD.
> Further, the requirement that he be tried within 120 days was not waived at either time he
> was brought into federal custody.

> More than one and one-half years have passed since the first time Mr. Kramer arrived
> in federal court pursuant to the detainer, and nearly 6 months have passed since he
> arrived in federal custody in November 2012.  Further, Mr. Kramer asserts that the waiver
> he entered in October 2011 did not waive his rights under the anti-shuttling provision of
> the IAD the next year when he was brought to federal custody and then returned again to
> state custody.  Both these periods exceed the 120 day time limit set forth in the IAD.

> Mr. Kramer's second return to state custody after the first detainer was filed, when he
> waived no other provision of the IAD, violated his rights under IAD.  <u>Alabama v.
> Bozeman</u>, 533 U.S. 146, 153-56 (2001) (holding that prisoner's return to original place of
> imprisonment prior to trial in the receiving state, after spending one night in custody of
> the receiving state, was a violation of the IAD and holding that no *de minimus* exception
> exists under the IAD for a one day violation); <u>Id.</u> at 146 ("the Agreement provides that a
> State that obtains a prisoner for purposes of trial must try him within 120 days of his
> arrival, Art. IV(c), and if it returns him to his "original place of imprisonment" prior to that
> trial, charges "shall" be dismissed with prejudice, Art. IV(e)"); <u>Pope</u>, 183 F. Supp. 2d at
> 776 (holding that defendant's return to state custody before being tried in federal court was
> a violation of the IAD and required dismissal of the indictment).

Motion to Dismiss (Doc. No. 57) at ¶¶ 19-21.

    This court rejected defendant's contentions.  It concluded that through his IADA

waiver, "not only did Kramer waive his rights under the IADA on the record, he also

consented to further removals for any future court proceedings."  Opinion of June 10, 2013

(Doc. No. 59), at p. 4 (citation omitted).  It rejected his contention that the waiver somehow left intact an independent right to be tried within 120 days of his initial appearance.  Id. ("Neither Kramer nor his counsel made any change to the Order that would have waived only the antishuttling provision and left his right to be tried within [120] days intact.").  It then observed that defendant had filed 11 motions for extensions of time and 2 motions to continue the scheduled change of plea hearings.  Id.  As a result of these extensions, the court was unable to conclude that defendant's right to be brought to trial within 120 days was violated in any event.[3]  Id.  In short, the court found and concluded "that [defendant] waived his rights under the IADA."  Id.

    Defendant's assertion that the conditional provision in the plea agreement did not permit him to challenge this court's ruling that his speedy trial right to be brought to trial within 120 days of arriving in federal custody under the IADA was not violated is unsupported sophistry.  While defendant argued that he did not waive the 120 day time limit by executing his initial IAD waiver, he specifically and only asserted in his motion to dismiss that his "second return to state custody after the first detainer was filed, when he waived no other provision of the IAD, violated his rights under IAD."  He did not argue that he was entitled to dismissal merely because 120 days had lapsed after he initially was returned to state custody pursuant to his executed waiver.  The court nevertheless addressed this implicit argument in defendant's motion and concluded that defendant had waived it through both the waiver of his IADA rights and his many motions to continue and reschedule.  And apart from this gratuitous ruling, defendant did not present a separate motion seeking dismissal under the IADA or the Speedy Trial Act based merely on the right to a speedy disposition of the charges

---

[3]  The court inadvertently referenced the 180 day limitation that is applicable when a defendant properly initiates notice under the IADA to have pending charges promptly resolved, a procedure that did not occur in this case.

and the passage of time.  Thus, the issues presented to this court squarely centered on the effect of his IADA waiver when he was returned to federal custody in November of 2012 and then transferred back to state custody thereafter without being tried or executing a second waiver.

Of course, it is well settled that an appellate court generally will not entertain arguments and/or legal positions that were presented to the district court.  Because defendant did not present a standalone claim that his speedy trial rights under the IADA were violated after 120 days passed following his initial appearance before Judge Mitchell (or at any other time), appellate counsel lacked a sound basis to present the very claim defendant now seeks to advance.  Consequently, the wording and structure of the conditional provision could not have had a causal impact on defendant's ability to advance his more recently honed claim.

Moreover, defendant has failed to show his right to a speedy trial was violated under the IADA or the Speedy Trial Act.  Under Article IV of the IADA, trial on any outstanding charges "shall be commenced within one hundred and twenty days of the arrival of the prisoner in the receiving State, but for good cause shown . . . the court . . . may grant any necessary or reasonable continuance."  IADA, Art. IV(c); accord United States v. King, 2024 WL 3887274, * 5 (3d Cir., Aug. 21, 2024).[4]  Defendant focuses his post-appeal challenge to the calculation of time pursuant to what he contends was the time actually excluded by the court up until he filed his motion to dismiss.  He likewise asserts that a waiver under the IADA can only be accomplished "in open court with the prisoner or his counsel present which wasn't the case here."  Defendant's Reply Brief (Doc. No. 241) at 24.

---

[4]  "Under the IADA, the term 'State' includes 'the United States of America.'"  King, 2024 WL 3887274 at * 5 (citing IADA, Art. II(a) and United States v. Mauro, 436 U.S. 340, 354 (1978) (concluding that the "United States is a party to the Agreement as both a sending and a receiving State").

Neither of defendant's contentions are persuasive.  First, defendant has not challenged a single exclusion of time that was made under the Speedy Trial Act and such exclusions generally apply to the IADA with equal force.  As Judge D. Brooks Smith noted in King:

> We have already concluded that the continuances were factually supported and necessary to allow for effective trial preparation under the Speedy Trial Act.  See supra § III.A.  We likewise conclude that the continuances granted by the District Court were 'necessary' and 'reasonable' as required by Article IV of the IADA.  See United States v. Peterson, 945 F.3d 144, 154 (4th Cir. 2019) ("[E]very circuit court to reach the issue has agreed that periods excludable under the [Speedy Trial Act] for 'ends of justice' continuances should also toll the 120-day clock under the IADA's substantially similar 'good cause' continuance provision.").

Id. at * 6.  This court assessed the impact of defendant's motions and requests for continuances when it addressed defendant's motion to dismiss.  And while defendant conveniently argues that his speedy disposition rights under the IADA were violated notwithstanding his many motions and self-initiated continuances, the record demonstrates that this was far from established.  See, e.g., Email Exchange Between Donovan Cocas and Sarah Gannet (Doc. No. 164-2) at p. 2-7 (calculating that when necessary and reasonable exclusions are included, only 76 days elapsed between defendant's initial appearance and his motion to dismiss); Government Response Brief (Doc. No. 237) at 9-10 & n.4 (highlighting the many inconsistencies in defense counsel's construction of excluded IADA time in arguing that defendant's 2255 motion is unfounded).  When defendant's motions for continuances are taken into account, defendant's contention that the 120 day clock expired is unavailing.

But even assuming for the sake of argument that there was some question as to the expiration of the 120 day clock, the time needed to act on and resolve defendant's many pretrial motions properly tolled the running of that clock as well.  In addition to the IADA's good cause standard being interpreted in accord with the ends-of-justice provisions of the Speedy Trial Act, the 120 day clock in the IADA is tolled "whenever and for as long as the prisoner is unable to stand trial."  18 U.S.C. Art. VI(a).  The clear weight of authority

recognizes that this provision covers "periods of delay occasioned by . . . motions filed on behalf of [a] defendant." Peterson, 945 F.3d at 154 (quoting United States v. Nesbitt, 852 F.2d 1502, 1516 (7th Cir. 1988)).  This construction is both in harmony with the Speedy Trial Act and "avoids creating an incentive for defendants to saddle district courts with innumerable pretrial motions in hopes of manufacturing delays and waiting out the IADA's 120-day clock." Id. at 155.  That reasoning has particularly persuasive application here.  And when this additional time is taken into account, the record shows that defendant's right to be tried within 120 days under section IV of the IADA was not violated in any event.

Moreover, defendant discounts the time that was excluded pursuant to his subsequent motion to schedule a change of plea, which was filed eight days after the court disposed of defendant's motion to dismiss.  See Memorandum Order of June 10, 2013 (denying defendant's motion to dismiss under the IADA); Order of June 10, 2013, (Doc. No. 60) scheduling Jury Selection and Trial for June 24, 2013; and June 18, 2013, Motion to Schedule Change of Plea (Doc. No. 61).  Of course, the time needed to resolve defendant's motion to dismiss properly would be excluded as necessary and reasonable.  See Nesbitt, 852 F.2d at 1516 (periods of delay occasioned by the need to adjudicate the defendant's pretrial motions properly are excluded from the IADA's 120 day clock); United States v. Dawn, 900 F.2d 1132, 1136 (7th Cir. 1990) (same) (collecting cases).  And notwithstanding defendant's motion to dismiss and the 34 days needed to brief and resolve that motion, defendant's motion to schedule a change of plea properly was filed by counsel and the time from that filing through the rescheduled change of plea hearing properly was excluded under the IADA.  Thus, defendant has not shown that more than 120 days elapsed under the IADA between his first appearance and his change of plea.

At the very least, this inability to show that the 120 day limitation definitively was exceeded vested considerable discretion in counsel about how best to focus and present defendant's claim that relief was warranted under the IADA. Counsel exercised that discretion in presenting the challenge as contending that defendant did not waive his anti-shuttling rights under the IADA the second time he was returned to state custody, and he did not waive his right to be tried within 120 days prior to being returned to state custody on either of the two occasions when he was returned. See Motion to Dismiss (Doc. No. 57) at ¶¶ 18-20. Given this backdrop, counsel certainly was functioning at a level far above the floor required by the Sixth Amendment and defendant's current arguments fall far short of demonstrating that defendant was prejudiced by the advocacy advanced.

Moreover, defendant's current contention that the conditional provision in the plea agreement did not permit him to advance the argument that his right to be brought to trial within 120 days of his initial appearance was violated without establishing that his rights under the anti-shuttling provision were also violated is belied by the actual wording of the provision. The conditional waiver provided: defendant may take an appeal on whether defendant's "wavier of rights under the Interstate Agreement on Detainers Act (18 U.S.C.A. App.2 § 2, Article IV(e) at the time of his arraignment remained in effect upon his November 2012 federal court appearance and until the time his counsel filed the Motion to Dismiss Indictment at Doc. No. 57 of Crim. No. 11-207." The formulation of this carveout tracked this court's resolution of defendant's motion to dismiss with precision. This formulation would have permitted defendant to raise his contentions that the waiver was not in effect in whole or in part the second time he was returned to state custody and/or when this court denied his motion to dismiss. If his contentions and briefing could show that the waiver was not in effect as to all or some of his rights under the IADA at that time, then defendant would

have been able to urge that this court erroneously concluded that his waiver encompassed all of his rights under the IADA and his right to be brought to trial within 120 days of his first appearance had been violated.  There is no basis in the record to conclude that the conditional formulation precluded such an approach and defendant certainly cannot rely of the zealous assertions of opposing appellate counsel as presenting preclusive authority foreclosing the presentation of his arguments in such a manner.

Finally, defendant's assertion that a violation of the 120 day clock under section IV of the IADA necessarily would have resulted in a dismissal of the charges against him with prejudice is inaccurate.  As a general matter, a violation of the anti-shuttling provision brings about strict consequences: a dismissal of the indictment with prejudice. 18 U.S.C. app. 2, § 2, art. IV(e).  "But Congress carved out an exception to this general rule for when the United States is the jurisdiction receiving a prisoner." Peterson, 945 F.3d at 150 (citing 18 U.S.C. app. 2, § 9(1)).  "In this circumstance, the statute empowers the district court to decide whether dismissal with or without prejudice is appropriate, after considering a non-exclusive list of statutory factors.  These are (1) 'the seriousness of the offense'; (2) 'the facts and circumstances of the case which led to the dismissal'; and (3) 'the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice.'" Id. at 150-51.

Defendant's assertion that dismissal with prejudice was the only viable outcome is nothing more than unbridled speculation.  And what's more, the statutory factors strongly counsel against such a result.  Defendant was charged with committing a violent offense and using a firearm to accomplish it.  There was nothing in the record to warrant a dismissal beyond the antics and confusion brought about by defendant's insistence that his counsel take certain positions and pursue arguments that did not appear to be in his best interest given the

strength of the government's evidence and the fact that he had confessed. And the impact of a subsequent prosecution would not have had any negative effect on the administration of justice or the IADA. Thus, the record strongly supports the proposition that a dismissal would have been without prejudice.

Moreover, the discretionary nature of any potential dismissal under the IADA presents yet another insurmountable defect in defendant's current motion. Defendant sought to raise an error that if successful would have only produced a remand for the exercise of this court's discretion as between two alternatives: dismissing the case with or without prejudice. Under Essig and Folk, the inability to challenge this court's ruling on defendant's motion to dismiss as it related to the timeliness of defendant's prosecution was neither a procedural error that qualifies as "an omission inconsistent with the rudimentary demands of fair procedure" nor "a fundamental defect that inherently results in a complete miscarriage of justice." Folk, 954 F.3d at 604. Given the minimal impact that any relief could have had on the actual outcome of the case, defendant has failed to overcome the heavy measure of deference that must be accorded to trial counsel's election to recommend a change of plea pursuant to the conditional provision as formulated. Consequently, the second prong for relief under Strickland cannot be satisfied.

Defendant has failed to show that counsel's performance in crafting the conditional carveout and/or recommending that defendant accept the plea agreement containing it fell below the objective standard of performance guaranteed by the Sixth Amendment. He also has failed to show that the carveout actually would have precluded him from seeking review of his timeliness claim under the IADA and/or that any such violation under the IADA would have given rise to a remedy that would have produced a different result in his case. In other words, defendant has failed to show he was prejudice by counsel's challenged performance.

26

Under these circumstances, defendant's claim for ineffective assistance of counsel is subject to summary dismissal.

For the reasons set forth above, defendant's motion to vacate, set aside or correct sentence will be denied.  An appropriate order will follow.

Date: June 23, 2025

s/David Stewart Cercone
David Stewart Cercone
Senior United States District Judge

cc:    Michael L. Ivory, AUSA
       Barbara K. Doolittle, AUSA
       Adam Cogan, Esquire

       (*Via CM/ECF Electronic Mail*)

27